IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KRISTA L. FARMER BELLS                                                    PLAINTIFF

v.                                    NO. 4:14-cv-00347 JJV

CAROLYN W. COLVIN, Acting Commissioner                                    DEFENDANT
of the Social Security Administration

### MEMORANDUM OPINION AND ORDER

Plaintiff Krista L. Farmer Bells ("Bells"), now apparently known as Krista L. Farmer, commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Bells maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers two reasons why.[1] Bells first maintains that her residual functional capacity was not properly assessed because the ALJ erroneously relied upon medical assessments that were made without the benefit of all the evidence and because the ALJ did not reconcile the findings of a state agency medical consultant.

The ALJ is obligated to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

The ALJ found that Bells has severe impairments, one of which is anxiety. He assessed her residual functional capacity and found that she is capable of performing unskilled or semi-skilled work with some limitation. In making the finding, the ALJ gave "due weight and consideration" to the assessments of Dr. Winston Brown, M.D., ("Brown") and Dr. Karmen Hopkins, M.D., ("Hopkins") two state agency medical consultants. See Transcript at 19. Brown offered an assessment of Bell's mental residual functional capacity in September 2011 and opined that she is limited to unskilled work. See Transcript at 433-436. Hopkins offered an assessment of Bell's physical residual functional capacity in October 2011 and opined that Bells is capable of performing light work with postural restrictions. See Transcript at 593-600.

Bells maintains that the ALJ erroneously relied upon Brown and Hopkins' assessments. Bells so maintains because their assessments were made without the benefit of all the evidence, namely, evidence of an MRI of her lumbar spine identifying the source of her low back pain, evidence of a physical examination showing significant findings, and evidence she was receiving Toradol injections because her pain medication was not controlling her low back pain. See Pleading 13 at 5.

The Court accepts that Brown and Hopkins' assessments were offered before the evidence identified by Bells was produced, but it is of little consequence for at least three reasons. First, the ALJ did not give their assessments controlling weight or even

-2-

great weight. Instead, he gave their assessments "due weight and consideration." The Court is not persuaded that he gave the assessments inappropriate weight; they were simply two pieces of evidence he considered.

Second, the ALJ appears to have considered Brown and Hopkins' assessments for what they were, i.e., their assessments of Bell's mental and physical residual functional capacities as of the fall of 2011 and based on the evidence then before them. There is nothing to suggest that the ALJ considered them to be anything else.

Third, the ALJ considered the evidence identified by Bells in deciding this case. He specifically considered the December 2011 MRI of Bells' lumbar spine, see Transcript at 17, the results of which showed minimal disc disease at L5-S1 with accompanying facet disease as the likely source of her low back pain, see Transcript at 592. He considered that she was receiving physical therapy, and he considered the findings that were made during the course of her therapy. See Transcript at 17, 546. He also considered that she was receiving Toradol injections. See Transcript at 17, 560, 567.

Bells next maintains that the ALJ failed to reconcile Brown's assessment with the assessment of Bells' residual functional capacity made by the ALJ. Bells supports her assertion by noting that she was limited to unskilled work by Brown, but the ALJ found that Bells is capable of performing unskilled and semi-skilled work.

It is true that Brown's assessment is at odds with the ALJ's finding, but the discrepancy is of little consequence for at least two reasons. First, as the Court noted, the ALJ did not give Brown's assessment controlling weight or even great weight; the ALJ gave Brown's assessment "due weight and consideration." The ALJ did not give the

assessment inappropriate weight; it was simply one piece of evidence he considered.

Second, substantial evidence on the record as a whole supports the ALJ's finding that Bells is capable of performing unskilled and semi-skilled work. Although she represents that she became unable to work as of October 2007, that is, at the age of twenty-three, see Transcript at 131, she does not appear to have sought treatment for a mental health issue until June 2011. See Transcript at 413-415. At that time, Dr. Christopher B. Skelley, M.D., ("Skelley") noted that Bells was "positive for feelings of stress," see Transcript at 413, and he referred her to the Saline Memorial Hospital for testing. She was diagnosed with "altered mental status," but a CT scan and MRI of her brain revealed nothing remarkable. See Transcript at 484. Skelley saw Bells again after her discharge, at which time he appears to have attributed her condition to anxiety and stress. See Transcript at 419. He noted that she was negative for "crying spells, depression, personality change, difficulty concentrating, sadness, sleep disturbance, or suicidal thoughts." See Transcript at 419. He prescribed Celexa, an anti-depressant, and it appears to have helped her symptoms. See Transcript at 424-428, 430-432, 451-455, 557-584. To the extent she continued to experience feelings of stress, there is nothing to suggest that the feelings prevented her from performing semi-skilled work.

The non-medical evidence also does not suggest that Bell's anxiety prevents her from performing semi-skilled work. She testified during the administrative hearing that she continues to experience anxiety, see Transcript at 44-45, but there is evidence she continued working past the alleged onset date and only stopped working when she was fired. See Transcript at 35-37. As the ALJ noted during the administrative hearing, there

were also "issues of a recent marriage at the time [Bells] stopped working, and a child, which also reflect[] on the reasons why she's not working." See Transcript at 59.

Bells next maintains that the ALJ erred at step four of the sequential evaluation process. She so maintains because he failed to make "any findings as to the physical and mental demands of [her] past work." See Pleading 13 at 7.

Before the ALJ determines that a claimant can perform her past relevant work, he must first fully investigate, and make explicit findings as to, the physical and mental demands of the work. See Sells v. Shalala, 48 F.3d 1044 (8th Cir. 1995). See also Social Security Ruling 82-62. Once he does so, he must then compare the demands of the work with what the claimant is capable of performing. See Sells v. Shalala, supra.

During the administrative hearing, the ALJ asked a vocational expert to identify Bells' past relevant work. See Transcript at 38-41. The vocational expert testified that Bells has past relevant work as a "clerk," semi-skilled work performed at the light exertional level and codified at 290.477-014 of the Dictionary of Occupational Titles ("DOT"). See Transcript at 39. The ALJ asked the vocational expert whether a hypothetical individual with Bells' residual functional capacity, age, education, and work background could perform her past relevant work, and the vocational expert testified that the hypothetical individual could perform such work. See Transcript at 61. The vocational expert identified the position, though, as a "checker" and, alternatively, a "cashier." See Transcript at 61. The ALJ then compared Bells' residual functional capacity with the physical and mental demands of her work as a clerk and found that she is able to perform it as "actually and normally performed." See Transcript at 19.

Substantial evidence on the record as a whole supports the ALJ's findings as to the demands of Bells' past relevant work as a clerk and his comparison of those demands with what she is capable of performing. He correctly identified the demands of her past relevant work as the vocational expert cited the description of the work found in the DOT. The ALJ committed no error in so identifying the demands of Bells' past relevant work as he may discharge the duty to make explicit findings regarding the demands of a claimant's past work by "referring to the specific job descriptions in the [DOT] that are associated with the claimant's past work." See Sells v. Shalala, 48 F.3d at 1047. It is true that the vocational expert gave a confusing answer to the ALJ's hypothetical question when she identified the position the hypothetical individual could perform as a "checker" and, alternatively, a "cashier." The confusion does not warrant a remand, though, because the vocational expert and the ALJ identified the same DOT listing, that being, 290.477-014. The ALJ appropriately compared the demands of Bells' past relevant work with the finding he made regarding her residual functional capacity, the latter finding being supported by substantial evidence on the record as a whole.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Bells' complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 15th day of April, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE